# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 18 CR 69 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| ALEXANDER BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

A federal grand jury returned an indictment charging Alexander Brown with four counts: (1) attempted possession with the intent to distribute over 500 grams of cocaine; (2) possession with intent to distribute cocaine; (3) possession of a firearm after having been convicted of a felony; and (4) possession of a firearm in furtherance of the drug-trafficking offense in Count Two. Prior to trial, the Court granted Brown's motion to dismiss Count Three, and thus, Count Four became Count Three for trial. Doc. 65. On November 21, 2022, following a three-day trial, a jury returned its verdict finding Brown guilty on Counts One and Two and not guilty on Count Three. Brown now moves for a judgment of acquittal as to Count Two or, alternatively, a new trial. In his motion for a judgment of acquittal, Brown challenges the sufficiency of the evidence, arguing that the government failed to prove that he intended to distribute the cocaine found at his residence. But because the jury had sufficient evidence to find beyond a reasonable doubt that Brown intended to distribute the cocaine, the Court denies Brown's motion for a judgment of acquittal. In support of his motion for a new trial, Brown further argues that the Court erred in denying his motion to suppress and request for a *Franks* hearing. The Court finds that it did not err because probable cause existed to search Brown's residence. The Court, therefore, also denies Brown's motion for a new trial.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 29 allows a defendant to challenge the evidence after the close of the government's case, or after the close of all evidence, as "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a); *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017). The Court will only overturn the jury's verdict if "after viewing the evidence in the light most favorable to the government, the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Wrobel*, 841 F.3d 450, 454 (7th Cir. 2016) (citation omitted). "When challenging a conviction based on sufficiency of the evidence, a defendant bears a 'heavy' burden that is 'nearly insurmountable.'" *Kohli*, 847 F.3d at 489 (citation omitted).

Federal Rule of Criminal Procedure 33 allows "a district court to grant a timely request for a new trial 'if the interest of justice so requires.'" *United States v. O'Malley*, 833 F.3d 810, 811 (7th Cir. 2016) (quoting Fed. R. Crim. P. 33(a)). The Court should only grant a new trial if the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand," *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (alteration in original) (citation omitted), or "if there is a reasonable possibility that [a] trial error had a prejudicial effect on the jury's verdict," *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019). "The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Friedman*, 971 F.3d 700, 713 (7th Cir. 2020) (citation omitted).

**ANALYSIS**

**I.    Motion for a Judgment of Acquittal**

To convict Brown under 21 U.S.C. § 841(a)(1), the government had to prove knowing and intentional possession of a controlled substance, possession with the intent to distribute that

substance, and knowledge that the item is indeed a controlled substance. *United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008); *United States v. Mojica*, No. 12 CR 755-5, 2016 WL 3268991, at *5 (N.D. Ill. June 15, 2016). Brown admits that he possessed the cocaine found in his residence but argues that the government failed to prove that he intended to distribute the cocaine.[1] Rather, Brown argues that the evidence showed that the approximately 155 grams of cocaine was for his own personal use.

The government put forward substantial evidence showing intent to distribute. The government's expert witness, FBI Supervisory Special Agent Michael Culloton, testified that cocaine dealers typically buy large quantities of cocaine, such as a kilogram, and break down this larger amount into smaller quantities to sell at the street level. The cocaine found in Brown's bedside drawer was broken down into small quantities and stored in several plastic sandwich bags. The government also put forth evidence that Brown possessed two empty kilogram wrappers; a mixing agent called Tramadol that drug distributors use to "cut" cocaine, resulting in more product to sell; a money counter; a large amount of cash; and a ledger appearing to track Brown's drug sales and outstanding debts. Culloton also testified that 150 grams of cocaine could be as many as 1,500 doses of cocaine, suggesting that such a quantity is not a user amount of cocaine; that in Culloton's experience, cocaine users do not buy in bulk for personal use; and that common drug trafficking paraphernalia includes plastic bags, cutting agents, bulk cash, money counters, and ledgers.

But Brown contends that other evidence shows that the cocaine was for his personal use. For instance, Brown notes that the government did not recover a scale from Brown's residence,

---

[1] In his motion, Brown references 154 grams of cocaine, the amount found in the drawer under his bed, however, as the government points out, the parties stipulated that approximately 154.2 grams were found in the drawer while an additional approximately 1.29 grams were found in Brown's closet. Because Brown admits to possessing the cocaine, the Court assumes this was an oversight and that Brown does not dispute that he possessed all of the cocaine found at his residence.

which he argues would be necessary to break down the cocaine from kilograms to user quantities, and the cocaine tested negative for Tramadol. He further points to the fact that the vast majority of the cocaine was found in his bedside drawer while the other drug trafficking paraphernalia was found in the closet in an adjacent room, and that, while Brown had Ziploc bags in the closet, they were not the same type of sandwich bag used for the cocaine in his bedside drawer. The jury also heard evidence that Brown was a drug user, including that Brown tested positive for cocaine following his arrest. Brown also points out that he told the confidential source that "he was 'empty' and that he had buyers lined up for the cocaine that he was planning to purchase" from the confidential source. Doc. 173 at 5. He argues that his statement that he was "empty" shows that the cocaine recovered from his residence was for personal use, otherwise he would have sold that cocaine to the buyers he had "lined up." Lastly, Brown emphasizes the fact that the physical and electronic surveillance of Brown's residence did not result in direct evidence of Brown distributing drugs from the residence.

Although Brown argues that the evidence did not establish his intent to distribute the cocaine, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *United States v. Gonzalez*, 737 F.3d 1163, 1168 (7th Cir. 2013) (citation omitted); *see also United States v. Pope*, 739 F.2d 289, 291 (7th Cir. 1984) (the jury has the "exclusive authority to assess the witnesses' credibility, resolve evidentiary conflicts and draw inferences from the evidence presented"). Brown raised these same arguments throughout the trial during cross examinations and in his closing argument, but the jury rejected them. While perhaps a rational juror could have believed Brown's explanation that the cocaine was for his personal use, viewing the evidence in the light most favorable to the government, the jury certainly had a sufficient basis to conclude that Brown intended to

distribute the cocaine. *See United States v. Presbitero*, 569 F.3d 691, 700 (7th Cir. 2009)

("Alternative explanations are generally not enough to win a challenge to the sufficiency of the

evidence."). This is particularly true given the quantity of cocaine and that it was packaged in

individual bags. *See, e.g.*, *United States v. Puckett*, 405 F.3d 589, 601 (7th Cir. 2005)

(possession of cocaine in excess of an amount for personal use was sufficient to find intent to

distribute); *United States ex rel. Woods v. Ryker*, No. CIVA 06 C 2671, 2006 WL 2536684, at *8

(N.D. Ill. Aug. 29, 2006) (quantity and packaging of cocaine supported inference of intent to

distribute). Because the jury had a sufficient basis to find that Brown intended to distribute the

cocaine found at his residence, the Court denies Brown's motion for a judgment of acquittal.

## II.    Motion for a New Trial

Alternatively, Brown argues that the lack of sufficient evidence to support a guilty

verdict, coupled with the Court's denial of Brown's motion to suppress and request for a *Franks*

hearing, compromised his right to a fair trial. For the reasons discussed above, the Court finds

that Brown has not established that he is entitled to a new trial based on the sufficiency of the

evidence and thus only addresses Brown's argument that the Court erred in denying his motion

to suppress and request for a *Franks* hearing. *See United States v. Hollnagel*, 955 F. Supp. 2d

830, 868 (N.D. Ill. 2013) (rejecting motion for new trial for same reasons as judgment of

acquittal); *see also United States v. Sorich*¸ No. 05 CR 644, 2006 WL 3347555, at *11 (N.D. Ill.

Nov. 15, 2006) (same).

On the eve of the initial trial date in this matter, the government informed Brown that it

had discovered previously undisclosed footage from a pole camera that DEA law enforcement

officers set up behind Brown's residence at 2042 W. Warren from October 17, 2017 through

April 9, 2018. Special Agent Rodekohr's affidavit supporting the search warrant for Brown's

residence made no mention of the pole camera. The parties agreed to postpone the trial to allow Brown to review the new evidence. After reviewing the footage, Brown filed a motion to suppress the evidence seized from his residence on February 2, 2018, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) and the Fourth and Fourteenth Amendments to the United States Constitution. Doc. 133. Brown also requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Because Brown failed to make a substantial showing sufficient to require a *Franks* hearing, and because Special Agent Rodekohr's affidavit supported the magistrate judge's probable cause finding, the Court denied Brown's motions. *See* Doc. 138.

In seeking a new trial, Brown incorporates the arguments from his motion to suppress and request for a *Franks* hearing and additionally argues that testimony at trial showed that physical surveillance of Brown's residence did not capture any evidence of drug transactions. Brown argues that because Special Agent Rodekohr's affidavit failed to include the fact that neither the pole camera nor the physical surveillance resulted in direct evidence of drug trafficking, the affidavit was insufficient to support probable cause. As to the pole camera footage, the Court adopts and incorporates its reasoning from its opinion denying Brown's motion to suppress and request for a *Franks* hearing. *See* Doc. 138. As for the physical surveillance, Brown points out that unlike the pole camera, which only captured the back of the residence, the physical surveillance observed the entire residence. The Court finds that Special Agent Rodekohr's affidavit was sufficient to support probable cause.

"Affidavits submitted in support of a warrant are presumed valid." *United States v. Hanhardt*, 157 F. Supp. 2d 978, 992 (N.D. Ill. 2001). "Probable cause for a search warrant exists when the supporting affidavit presents a total set of circumstances creating a 'fair probability' that evidence of a crime will be found." *United States v. Zamudio*, 909 F.3d 172, 175 (7th Cir.

6

2018). "[F]or a search warrant, probable cause 'does not require direct evidence linking a crime to a particular place.'" *Id.* (quoting *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006)). Instead, an affidavit submitted in support of a search warrant "need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010).

Special Agent Rodekohr's affidavit did not need to include direct evidence linking criminal activity to Brown's residence. *See Zamudio*, 909 F.3d at 175. Instead, an issuing magistrate judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991). As the Seventh Circuit has recognized, "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *Id.*; *see also United States v. Correa*, 908 F.3d 208, 220 (7th Cir. 2018) ("[I]f officers have probable cause to arrest someone, there is a good chance they also have probable cause to search his home for evidence."). Further, "it is well established as a general matter that a magistrate evaluating a warrant application is entitled to take an officer's experience into account in determining whether probable cause exists." *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009).

Special Agent Rodekohr's affidavit specifically discussed the physical surveillance of Brown's residence. *See* Doc. 133-1 at 17 ("Additionally, physical surveillance of the Subject Premises indicates that BROWN resides at the Subject Premises. For example, on or about January 19, 2018, at approximately 10:00 a.m., law enforcement surveillance observed BROWN exit the Subject Premises, carrying what appeared to be a small bag in each hand, and depart in a vehicle registered to BROWN."); *id.* at 20 ("[O]n the morning of February 2, 2018, law

7

enforcement observed BROWN traveling directly from the Subject Premises to the XSport Fitness (without stopping in between) to meet CS-2. When BROWN met CS-2 . . . Brown was already carrying cash on his person. There is therefore probable cause to believe that the cash BROWN intended to use to pay CS-2 for the purported cocaine was stored at the Subject Premises."). The physical surveillance confirmed that Brown lived at 2042 W. Warren and even showed that Brown left the residence immediately preceding the February 2, 2018 controlled purchase. Special Agent Rodekohr's affidavit further stated that, based on his experience and training, drug traffickers generally store their drug-related paraphernalia, as well as maintain records and evidence of financial transactions related to their drug-trafficking, at their residences. Thus, Special Agent Rodekohr's affidavit provided the magistrate judge with sufficient information that suggested a fair probability that agents would find evidence of criminal activity at 2042 W. Warren. *See Zamudio*, 909 F.3d at 176 (based on agents' experience and training, "the issuing judge reasonably drew the inference that indicia of drug-trafficking would be found at Zamudio's home"); *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014) (agent's observation of the defendant leaving a building to sell an informant drugs, in addition to the agent's experience that drug dealers likely keep contraband in their homes, created "fair probability" that drugs would be found at the building); *Orozco*, 576 F.3d at 749–50 (sufficient nexus existed to support search of the defendant's home even though "the only support for a link between [the defendant's] home and the sought-after evidence of drug dealing and gang activity was [the agent's] believe—informed by his decade of experience as a narcotics investigator— that [the defendant], as second-in-command of the Aurora Latin Kings gang, would keep drug- and gang-related evidence at his home").

Brown's argument that the affidavit failed to include that the physical surveillance did not directly capture evidence of drug trafficking cannot carry the day. As discussed above, Rodekohr's affidavit sufficiently provided a basis to conclude that a search of 2042 W. Warren would likely reveal indicia of Brown's drug trafficking activities. Additional information about the lack of criminal activity captured by the physical surveillance would only have provided an alternative interpretation of Brown's activities at 2042 W. Warren, but this possibly innocent explanation would not have vitiated the inferences the magistrate judge drew from the evidence Rodekohr did include in the affidavit that supported probably cause. *See United States v. Elizondo*, No. 18 CR 286, 2019 WL 861429, at *10 (N.D. Ill. Feb. 22, 2019) ("[T]he omission from the warrant application of information that might suggest an alternative interpretation of Elizondo's actions as described in the application was not material. Law enforcement may not ignore 'conclusively established' evidence that defeats probable cause or 'clearly exculpatory facts,' but the material that [the defendant] cites does not fall within either of these categories." (Citations omitted))); *see also United States v. Carter*, No. 19 CR 819, 2020 WL 5440010, at *2 (N.D. Ill. Sept. 9, 2020) ("An accurate statement of the database query from 2017 [in the warrant affidavit] would not have changed the determination, and Carter has not made any showing that the false information or omissions affected the reasonableness of the magistrate judge's decision"), *reconsideration denied*, 2020 WL 7490401 (N.D. Ill. Dec. 21, 2020). Unlike omitted information that directly contradicts an affiant's statements, such as in *United States v. Sanders*, where the affiant stated that he smelled marijuana but omitted that a drug dog failed to alert to the presence of drugs, 710 F. Supp. 2d 821, 826 (S.D. Ind. 2010), or the omission of the fact that a confidential source provided information directly following his arrest in an attempt to "get himself out of the situation," as in *United States v. Simmons*, 771 F. Supp. 2d 908, 922–23 (N.D.

9

Ill . 2011), here, the supposed omission does not undermine Special Agent Rodekohr's credibility so as to call into question the basis for the magistrate judge's probable cause finding. Special Agent Rodekohr's affidavit supported a finding that Brown lived at 2042 W. Warren and that drug trafficking evidence was likely to be found there. Even if Special Agent Rodekohr had explicitly included in his affidavit that the physical surveillance did not observe direct evidence of drug trafficking, probable cause existed to search Brown's residence. *United States v. Santiago*, 905 F.3d 1013, 1025 (7th Cir. 2018) (upholding the denial of a *Franks* hearing because the affidavit [was] replete with evidence that the target phones were used to coordinate drug transactions, that the transactions were on-going, and that the tapping of those phones would lead to further evidence of criminal activity"). Therefore, because even considering the allegedly omitted information, probable cause existed to search 2042 W. Warren, the Court denies Brown's motion for a new trial.

## CONCLUSION

For the foregoing reasons, the Court denies Brown's motion for a judgment of acquittal or, alternatively, a new trial [173].


Dated: March 27, 2024

SARA L. ELLIS
United States District Judge

10